OPINION
{¶ 1} Justin Higbee appeals from his conviction of burglary and robbery in the Miami County Common Pleas Court. Higbee's appointed counsel has filed a brief pursuant to Anders v. California (1967), 386 U.S. 788, 87 S.Ct. 1396, 18 L.Ed.2d 493, *Page 2 
indicating he could find no arguable merit to Higbee's appeal.
 {¶ 2} Higbee's conviction for burglary stems from his no-contest plea to the charge of breaking into a business called Muffler Brothers in Troy with a co-defendant, and stealing some speakers. (T. 11.) Our review of Higbee's no-contest plea indicates the trial court fully complied with Crim.R. 11 and the plea was voluntarily entered by Higbee with full knowledge of its consequences.
 {¶ 3} Higbee's conviction of robbery came after a jury trial and resulted from the following evidence set out in the brief:
 {¶ 4} On November 16, 2005, Jessica Dunn was working at the One Stop Drive Thru in Troy, Ohio. Ms. Dunn was working alone on the 5 p.m. to 12 a.m. shift. She was standing in the drive thru's office at approximately 11:50 when the beeper that signals someone entering the drive thru went off. When Ms. Dunn turned around to see who had entered the drive thru, she saw a man standing in the doorway to the office. The intruder was a white male wearing a gray sweatshirt with the hood up, dark jeans, white tennis shoes, and a bandana covering his face from the nose down. (T. at 21.) Almost immediately, the man ran at Ms. Dunn and began spraying mace. The mace went directly in Ms. Dunn's eyes. After the initial macing, the man grabbed her by the hair, threw her to the ground and started hitting her around the head, all the while continuing to spray the mace. At that point, Ms. Dunn told the man to take everything and leave, but the assailant dragged Ms. Dunn by the hair to the cash register, and she opened the register. After Ms. Dunn opened the register, the assailant continued to spray her with mace until the can was empty and dragged her to the back door and asked her to open it. The attacker pulled Ms. Dunn outside and told her to lie down *Page 3 
before he left on foot. During his escape, the attacker dropped a single dollar bill. According to Ms. Dunn, one hundred ninety one dollars was removed from the cash register.
 {¶ 5} Once the attacker had left, Ms. Dunn shut herself in the drive thru and called the police. During the call to the police, Ms. Dunn identified her attacker as the appellant. (T. at 29.) She said she recognized him by his eyes and his voice. (T. at 33.) Once the police arrived, they reviewed a videotape from the drive thru's security camera and were unable to make out the identity of the attacker. The officers also unsuccessfully attempted to lift a fingerprint from the one-dollar bill left behind by the robber. Upon arrival, two officers confirmed that Ms. Dunn believed that Appellant was her attacker. She told them that Higbee was a frequent customer of the store and used to date a roommate of hers. She provided the officers Higbee's address, which was a few blocks from the store. (T. at 44.) The officers then went to Appellant's home and questioned him. According to the testimony, Appellant allowed the police inside and was cooperative with the investigation. He informed the officers he had not been outside since 11 p.m., and the officers were unable to detect the smell of mace or a trace of it on his hands. (T. at 45.) The officers did report that Higbee was shaking, but he claimed it was due to the officers' presence. (T. at 46.) The officers also could not find any clothing in Mr. Higbee's home that matched the clothing worn by the robber. (T. at 50.)
 {¶ 6} After the initial investigation, the case remained cold for almost a year. On October 6, 2006, the police interviewed a man by the name of Joe Kindell concerning the drive thru robbery and other unsolved crimes. (T. at 61.) The interview with Mr. *Page 4 
Kindell led police to Higbee. (T. at 62.) On October 10, 2006, the police interviewed Higbee, at which time he admitted to being involved in the planning of the robbery, providing the mace and operating as a lookout, with Mr. Kindell acting as the principal. (T. at 63-66.) Higbee told the officers that he did not condone the way that Ms. Dunn was treated during the robbery, but the plan he devised involved mace. (T. at 68.) Higbee said he and Kindell split the proceeds of the robbery. (T. 63.)
 {¶ 7} At the close of the State's case, Appellant's trial counsel moved for a Rule 29 acquittal on the basis that there was conflicting accounts of whether Higbee was the principal or the accomplice. The court denied the motion stating that accomplice and principal liability were essentially the same and were subject to the same sentence. (T. at 72-73.) {¶ 8} The defense offered only one witness, Joe Kindell. On the stand, Mr. Kindell claimed that he had carried out the robbery alone without the assistance of Appellant. (T. at 74-75.) The State elicited testimony from Mr. Kindell to the effect that he had previously implicated Higbee in the robbery. (T. at 76-79.) Mr. Kindell stated that he had done so previously in hopes of getting a deal from the State and that he was being truthful now. Id. Mr. Kindell did testify that he pled to all his charges in his case and did not get a deal. Id.
 {¶ 9} The jury found Appellant guilty of robbery. On April 9, 2007, Appellant appeared before the trial court for sentencing. After taking statements from the defense and prosecution, the court weighed all "recidivism and seriousness factors on both charges" and sentenced Appellant to five years in prison on the robbery charge and ten months on the breaking and entering charge, with the sentences to run concurrently. *Page 5 
The court further ordered Appellant to pay restitution to his victims for the damage he had done. Finally, the court informed the appellant of the mandatory three-year post release control sentence that went along with the robbery charge.
 {¶ 10} The trial court properly overruled Higbee's motion for a judgment of acquittal pursuant to Crim.R. 29(A). A court may not grant a Rule 29 motion if, after viewing the evidence in the light most favorable to the State, it finds that "`reasonable minds could reach different conclusions on whether the evidence proves each element of the offense charged beyond a reasonable doubt.'" State v. Bridgeman (1978),55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184 (citation omitted). Reasonable minds could certainly have concluded after the State rested that Higbee had either personally robbed Ms. Dunn or acted as a lookout as he told the police when he was interviewed. Ohio's complicity statute, R.C. 2923.02 provides that no person acting with the required culpability shall aid or abet another in committing an offense. He shall be prosecuted and punished as if he were a principal offender and a charge of complicity may be stated in terms of the complicity section or in terms of the principal offense. See R.C. 2923.02(F). Higbee was charged as a principal. The State presented ample evidence that he was either the principal or an accomplice to the robbery.
 {¶ 11} The judgment was also not based on insufficient evidence, nor was it against the manifest weight of the evidence. There is also no evidence that Higbee's trial counsel was constitutionally ineffective. Lastly, the trial court was well within its discretion to sentence Higbee to a five-year sentence on the robbery charge. The maximum sentence for a violation of R.C. 2911.02(A)(2), for which Higbee was convicted, is eight (8) years. The trial court noted it had considered the recidivism and *Page 6 
seriousness factors on both charges as listed in R.C. 2929.12. The trial court noted that Higbee had previous convictions in 2000, 2002, and 2004 for forgery and trafficking in drugs. The court noted Higbee had numerous misdemeanor convictions and a juvenile record as well.
 {¶ 12} We have carefully reviewed the entire record, and we conclude Higbee received a fair trial and a fair sentence. We agree there is no arguable merit to this appeal. The judgment of the trial court is Affirmed.
 WOLFF, P.J., and DONOVAN, J., concur. *Page 1